Herbert Jenney, for petitioner.

---

(Superior Court of Cincinnati.)
Special Term, 1901.
H. C. KEVIL v. STANDARD OIL CO.

A contract by which a corporation agrees to give a person engaged in a similar line of business employment within a reasonable time, and at a reasonable salary if he would discontinue his business, is not in violation of the act of April 18, 1893, (93 O. L., 143), popularly known as the Anti-Trust Law.

An agreement to give a person employment if he would give up his business and enter the services of the other party is not too indefinite to be capable of enforcement when properly construed as a contract to employ him so long as the employer was engaged in that business, and had work which the employe could do and desired to do and was able to do satisfactorily.

A contract by which one sells his business agreeing not to enter into a similar business for a certain length of time and with respect to certain territory is valid if the prohibited territory is not more extensive than is necessary to enable the party contracting to enjoy the fruits of the contract.

---

SMITH, J.

This case comes before me on a demurrer to the petition, the material allegations of which are as follows:

That on or about November, 1898, the plaintiff was engaged in the oil business in the city of Covington, Kentucky, buying oil from wholesale dealers and delivering the same in smaller quantities to divers customers, and that the business was a remunerative one.

That the Standard Oil Company is a corporation whose business is the manufacture of petroleum and its products, "that it was incorporated in 1870, and subsequently became a party to a certain trust agreement, constituting what is known as the Standard Oil Trust, and all of its stock is held by the trustees of said trust. By said agreement a large number of individuals, partnerships and corpora-tions, dealing in oil, put all the property employed in the oil business into the hands of nine trustees who were to manage the same in accordance with the trust agreement, thus creating a gigantic monopoly, which controls the entire oil business in the United States."

That on or about December 16, 1898, the defendant entered into a contract with plaintiff, that if plaintiff would abandon his business, it would provide him with employment in one of its establishments within a reasonable time thereafter, and would pay him a reasonable salary for his services, and that until the defendant could provide such employment it would pay to plaintiff the sum of nine dollars a week.

That in pursuance of said agreement plaintiff discontinued his business, sold his horses, wagon and other assets, and his business thereby was broken up and destroyed; that defendant paid to plaintiff the sum of nine dollars a week until the last day of April, 1899, when the defendant refused any further payments and notified the plaintiff that it would no longer pay him any further sums and would not provide him any employment; that since April, 1899, plaintiff has endeavored to procure employment, but has been unable to do so; that by reason of said action of defendant, his business has been destroyed, and he has been unable to earn a livelihood for himself and family, and has been damaged in the sum of twenty thousand dollars, for which he asks judgment.

The question is, does the petition state a cause of action?

The position of the defendant is that under the law passed in this state in April, 1898, 93 O. L., 143, and popularly known as the anti-trust law, the agreement set out in the petition is null and void, being a combination of property, skill and acts such as is forbidden by that statute; and that therefore the plaintiff cannot recover on the contract.

The two sections of this statute which the defendant contends support its position are the first and eighth, which are as follows:

"SECTION 1. *Be it enacted by the general assembly of the state of Ohio,* that a trust is a combination of capital, skill or acts by two or more persons, firms, partnerships, corporations or associations of persons, or of any two or more of them for either, any or all of the following purposes:

"1. To create or carry out restrictions in trade or commerce.

"2. To limit or reduce the production, or increase, or reduce the price of merchandise or any commodity.

"3. To prevent competition in manufacturing, making, transportation, sale, or pur-

chase of merchandise, produce or any commodity.

"4. To fix at any standard or figure, whereby its price to the public or consumer shall be in any manner controlled or established, any article or commodity of merchandise, produce or commerce intended for sale, barter, use or consumption in this state.

"5. To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they shall bind or have bound themselves not to sell, dispose of or transport any article or any commodity or any article of trade, use, merchandise, commerce, or consumption below a common standard figure or fixed value, or by which they shall agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure, or by which they shall in any manner establish or settle the price of any article, commodity or transportation between them or themselves and others, so as to directly or indirectly preclude a free and unrestricted competition among themselves, or any purchasers or consumers in the sale or transportation of any article or commodity, or by which they shall agree to pool, combine or directly or indirectly unite any interests that they may have connected with the sale or transportation of any such article or commodity, that its price might in any manner be affected. Every· such trust as is' defined herein is declared to be unlawful, against public policy and void."

"SECTION 8. That any contract or agreement in violation of the provisions of this act, shall be absolutely void and not enforceable either in law or equity."

It is difficult to understand why the plaintiff has inserted in his petition the allegation that the stock of the defendant company is held in common with that of other companies in a trust under what is known as the Standard Oil Trust, because such transfer of the stock does not destroy the corporation, and the action here is not against the Standard Oil Trust, but against the corporation, the Standard Oil Company, which the petition alleges through its officers entered into the contract with the plaintiff. The allegations therefore, in regard to its stock being placed in trust in common with a number of other corporations may be rejected as surplusage. But if the allegations of the petition are to be construed as meaning that the contract was made for the benefit of the trust, this inference alone would not prevent a recovery, because it does not appear that at the time the contract was made the plaintiff was informed as to the internal affairs of the corporation. And a contract cannot be declared invalid because

the intention of one of the parties is illegal. Such intention to invalidate the contract must be mutual.

The main contention of the defendant, that the contract set out in the petition is invalid, however, is based upon the broad language of the anti-trust statute, of which both parties are presumed to have knowledge, and the decision of our Supreme Court in which the constitutionality of the act was upheld. State ex rel. Buckeye Pipe Line Co., 61 O. St., 520, 547.

The last mentioned case was a proceeding in quo warranto, in which it was alleged that the defendant had combined with nineteen other corporations for the purpose of preventing competition in the production, transportation, and refining of petroleum, and of fixing and maintaining the prices at which its various products should be sold. It was a combination of different companies solely for the purpose of restraining competition and maintaining prices.

But in deciding the last mentioned case the court distinctly says that, "The contract which we are asked to denounce is not incidental to the sale of property, or any interest therein. It does not concern the good will of any business. It does not contemplate the formation of any corporation or other company for the carrying on of any business. In the subject of the contract the interests of the contracting parties are not adverse; they do not even diverge. The agreement according to the allegations of the petition has no purpose whatever except to prevent competition in the production, transportation and refining of petroleum to the end that there may be received from the consumers of its products higher prices than would prevail under the condition of open competition. Counsel for the defendants admit that such a contract is within the inhibitions of the act, but deny the power of the legislature to inhibit it."

But as the contract set up in the petition is not a contract of combination solely for the purpose of restraining competition and maintaining prices, but is one in which a business is abandoned and good will as well as personal services transferred, the question whether such a contract falls within the inhibition of the anti-trust law is not passed upon by State ex rel. v. Buckeye Pipe Line Co., supra, and as far as I am informed is presented in this state now for the first time since the passage of that law.

In United States v. Addyston Pipe & Steel Co., 54 U. S., App., 723, the distinction between a case such as the one at bar and that which our Supreme Court had before it in State v. Buckeye Co., supra, is clearly stated

and the law applicable to the two cases thoroughly reviewed. In that case there was a combination of corporations solely for the purpose of restraining competition and maintaining prices and the federal anti-trust law was held applicable to it and constitutional, just as in State v. Buckeye Co., the Ohio statute was held applicable and constitutional.

But it will appear from an examination of the case of United States v. Addyston Co., supra, that the circuit court of appeals passed upon the question whether the federal anti-trust law applied to a case where the restraint imposed by the agreement is merely ancillary to the main purpose of a contract and not the sole object of the contract. And in that case it as held that at common law contracts by which a business is purchased and the purchasee agrees to go out of the business for a certain length of time, and with respect to a certain territory, are valid, such restraints of trade being ancillary to the main purpose of the contract and necessary to the contractee in the enjoyment of the legitimate fruits of the contract. Thus in contracts by a merchant who sells his business to another, the merchant may agree that he will not engage in the business in the same territory for a certain length of time. The Paragon Oil Co. v. Hall, 7 C. C., 240, and in Hitchcock v. Coker, 6 Ad. Vel., 438, it was held that the covenant need not be limited as to time; and in other cases cited in United States v. Addyston Pipe Co., supra, it was held that the covenant need not be restricted as to the territory if such covenants are ancillary to the main contract and are necessary to the proper enjoyment of the subject of the contract.

It was held in the United States v. Addyston Pipe Co., supra, case that such contracts were unaffected by the federal anti-trust law, and such I believe to be the proper construction of the Ohio anti-trust law.

The sole inquiry remaining then is, whether the contract set up in the petition falls in this excepted class, not covered by the anti-trust law, and it is clear that it does.

The allegations of the petition are that the plaintiff agreed with the defendant to go out of business and go into the employ of the defendant. The allegations do not state for what period of time the contract was to continue, nor that the plaintiff was never to go into the same business again. But I think it is fairly to be inferred that the plaintiff was to have employment so long as the defendant was engaged in the oil business; that during that time the plaintiff was not to go into his former business; and that the agreement related to the territory of Covington.

In Lange v. Werk, 2 O. St., 520, it was held

that an agreement not to go again into business in Hamilton county was valid; while in Lufkin Rule Co. v. Fringeli, 57 O. St., 596, it was held that an agreement not to go into business in the United States or the state of Ohio was invalid, such restraint being regarded as too general and therefore against public policy and void.

In both cases, however, the court recognizes that where one sells his business to another, or goes himself into another form of business for himself in opposition to the new business with which he has connected himself, that the agreement is valid if the prohibited territory is not more extensive than is necessary to enable the party contracting to enjoy the fruits of the contract. In this case there can be no doubt that the territory covered by the contract is reasonable.

A case almost identical to this is Carnig v. Carr, 35 L. R. A., 512, (Mass.), Feb'y, 1897. In that case it was held that

1. "An agreement to give a person permanent employment at stipulated wages if he would give up his business and enter the services of the other party in the same occupation is not too indefinite to be capable of enforcement when properly construed as a contract to employ him so long as the employer was engaged in that business, and had work which the employee could do and desired to do and was able to do satisfactorily

2. "A contract whereby one is induced to give up his own similar business is not lacking in mutuality because he does not bind himself to continue in the employment.

4. "The restraint of an employee from engaging in business so long as he continues in the employment of a person who agrees to give him permanent employment does not make the contract unlawful or against public policy."

The demurrer will be overruled.

Rogers Wright, for plaintiff.

Stallo, Richards & Shaw, and B. P. Hollister, for defendant.